UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FARKUKH KASSYMOV,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3515-MLP

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He appears pro se and filed this 28 U.S.C. § 2241 habeas action, challenging his immigration detention as violative of the U.S. Constitution, federal statute, and federal regulations. (Dkt. # 5.) He seeks release from custody or a bond hearing. (*Id.* at 3.) Respondents filed a return memorandum (dkt. # 9), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Kurtis Reed (dkt. # 10) ("Reed Decl."), and their counsel Kayla Stahman (dkt. # 11) ("Stahman Decl."). Petitioner filed a traverse in reply. (Dkt. # 12.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 5) for the reasons set forth herein.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Kazakhstan, who entered the United States near San Ysidro, California, on May 6, 2023. (Reed Decl., ¶ 3.) He was detained by Customs and Border Protection and transported to San Diego for further processing. (*Id.*) He was thereafter served with a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA"). (*Id.*) He was then released from custody into the United States on an Order of Release on Recognizance ("OREC"). (*Id.*; *see* Stahman Decl., ¶ 2, Ex. C.)

While released, Petitioner filed an application for relief from removal with the New York Immigration Court, which remains pending. (Reed Decl., ¶ 4; dkt. # 5-2 at 2.) U.S. Citizenship and Immigration Services authorized Petitioner to work in the United States until May 2029. (Dkt. # 5-6 at 2.) Petitioner was scheduled to attend an immigration hearing before the New York Immigration Court on June 28, 2027. (*See* dkt. # 5-8 at 2-3.)

On September 10, 2026, Petitioner was pulled over in a commercial vehicle by the Idaho State Police for bypassing weigh station scales. (Reed Decl., ¶ 5.) Petitioner was "escorted to the Huetter Port of Entry in Post Falls, Idaho" where an ICE Emergency and Removal Operations ("ERO") officer was waiting for him. (*Id.*) ERO determined Petitioner failed to notify ICE that he relocated from New York to Illinois as required under 8 U.S.C. § 1306(b). (*Id.*) ERO and Idaho State Police also determined Petitioner did not have a commercial driver's license and had "several other violations." (*Id.*) Officer Reed asserts ERO therefore issued a warrant for his arrest and conducted a custody redetermination. (*Id.*; *see* Stahman Decl., ¶ 2, Ex. D (warrant); dkt. # 5-

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 7.)

4 at 2 (Notice of Custody Determination).) Petitioner requested an immigration judge review ERO's custody redetermination, but Officer Reed asserts without explanation that a hearing has not been scheduled. (Reed Decl., ¶ 6.)

Petitioner was transferred to the NWIPC on September 10, 2026. (Reed Decl., ¶ 8.) He was scheduled to attend a hearing in the Tacoma immigration court on October 8, 2026. (*Id.*) The results of that hearing are unknown.

Petitioner filed the instant petition on September 21, 2026. (Dkt. # 6.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

The parties assess the circumstances of Petitioner's redetention under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) but reach opposite conclusions. (Dkt. # 5-2 at 6-7; dkt. # 9 at 5-7.) *Mathews* weighs: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens; and courts in this District commonly apply the framework to procedural due process claims like Petitioner's here. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

As for the first factor, the freedom from physical confinement at the hands of the government is among the most "fundamental" of liberty interests. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Respondents emphasize that Petitioner's "expectation of continued liberty [was] limited and contingent on compliance with those conditions [of his OREC]." (Dkt. # 9 at 6.) However, even those conditionally released "have a liberty interest in their continued liberty," the revocation of which is entitled to due process. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). The first factor weighs in favor of Petitioner.

As for the second factor, Respondents acknowledge courts in this District have found that due process requires pre-deprivation process prior to revoking a noncitizen's liberty based on alleged violations of release conditions, but—without any additional discussion or analysis—respectfully disagree with those decisions. (Dkt. # 9 at 6.) Respondents further contend that the risk of an erroneous deprivation was low for Petitioner because he is subject to expedited removal as an "applicant for admission subject to mandatory detention" under 8 U.S.C. § 1225(b)(1). (*Id.* at 1, 7.)

Yet there is no evidence that Petitioner was, or is, subject to expedited removal or mandatory detention under § 1225(b)(1). Petitioner was not placed into expedited removal proceedings when he entered the United States in 2023, but rather non-expedited removal proceedings under section 240 and released on an OREC authorized under § 1226(a), the discretionary detention authority of the INA. (Stahman Decl., ¶ 2, Exs. B, C.) *See Garcia v. Chestnut*, 2025 WL 3771348, at *8 (E.D. Cal. Dec. 31, 2025) (rejecting Respondents' argument

that petitioner's detention was mandatory under 1225(b) "even though the government previously, affirmatively placed her into Section 240 proceedings").

Even the government's recent treatment of Petitioner shows he is subject to discretionary detention under § 1226(a). He was taken into custody on September 10, 2026, pursuant to a warrant authorized by "section 236" of the INA, which is codified at § 1226. (Stahman Decl., ¶ 2, Ex. D.) *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172-73 (9th Cir. 2026) (finding the government's use of a warrant, which "permits (but does not require)" the arrest and detention of noncitizens, showed the noncitizen plaintiffs were "at least facially subject to detention under § 1226(a)"). And to the extent Petitioner's 2023 NTA remains operative, the Court observes he is charged under INA § 212(a)(6)(A)(i)—an offense that would preclude expedited removal proceedings. *See* 8 C.F.R. § 235.3(b)(3) ("In the expedited removal process, the [Department] may not charge an alien with any additional grounds of inadmissibility other than section 212(a)(6)(C) or 212(a)(7) of the [INA].").

When Petitioner was released on an OREC in 2023, the government must have necessarily found that he posed neither a danger nor flight risk. 8 C.F.R. § 236.1(c)(8). The "unilateral decision" to then revoke that release without first providing pre-deprivation process to determine whether Petitioner now presents either of those risks comes with a high risk of erroneous deprivation. *Alfaro Siguenza v. Hernandez*, 2026 WL 2587980, at *4 (W.D. Wash. Aug. 27, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases)). At most, the record reflects Respondents "redetermined" Petitioner's custody after he was redetained. But what that process entailed, who conducted it, and whether Petitioner was provided any opportunity to explain or respond, is not before the Court. Pre-deprivation process would have provided an opportunity for Petitioner to challenge the factual and legal bases for his redetention and would

have been valuable in ensuring that erroneous deprivation was avoided. This factor weighs in favor of Petitioner.

As for the final factor, Respondents contend that "ensuring compliance with release conditions and securing Petitioner's appearance for future proceedings is strong" and would have been "undermined by a notice requirement that could invite further noncompliance or flight[.]" (Dkt. # 9 at 7.) The government certainly has an interest in enforcing immigration laws and compliance, ensuring future appearances, and mitigating danger and flight risk. On these facts, however, its interest in doing so without any pre-deprivation process was low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Other than vague assertions within Petitioner's DHS administrative file, made by an unidentified government official, that Petitioner posed a danger to the public because he was operating a commercial vehicle without a license, there is no other evidence that Petitioner posed a danger to the community to a degree that arguably justified forgoing pre-deprivation process. (*See* Stahman Decl., ¶ 2, Ex. A at 3.) The Court does not find this asserted governmental interest outweighs Petitioner's interest in remaining free, or the risk of an erroneous deprivation created by a lack of pre-deprivation process.

In sum, all three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Respondents contend, without any additional argument or legal authority, that a bond hearing would be the appropriate remedy. (Dkt. # 9 at 7.) However, given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

In finding relief is warranted under *Mathews*, the Court need not reach Petitioner's claim challenging his warrantless arrest. (Dkt. # 5 at 3 ("Ground One").) That claim is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus (dkt. # 5) is GRANTED in part.

(2) Respondents shall release Petitioner from immigration detention within **twenty-four (24) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3) Respondents shall file a status report, no later than **two (2) business days** from the date of this Order, confirming that Petitioner has been released.

(4) Petitioner's remaining claim is moot.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court strongly encourages the parties to meet and confer before filing any such motion.

Dated this 26th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge